IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WARD ST-JUSTE, by and through his next friend, CELOUSE SAINT-FLINA,<br><br>Plaintiff,<br><br>v.<br><br>BOROUGH OF DARBY and ZONING HEARING BOARD OF THE BOROUGH OF DARBY,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: Civil Action No. _____<br>:<br>:<br>:<br>:<br>:<br>: |

**COMPLAINT**

I.  **Introduction**

1. Plaintiff Ward St-Juste files this lawsuit under the Fair Housing Act and the Americans with Disabilities Act to challenge Defendants' refusal to recognize his right to live and receive appropriate and necessary support services in a single-person residential habilitation program in a family home in a residential district within the Borough of Darby.

2. Defendants' discriminatory actions have caused the imminent risk of an enforcement action that could result in Plaintiff being evicted from his home.

## II. Jurisdiction and Venue

3. The Court has jurisdiction over this lawsuit under 28 U.S.C. §§ 1331, 1343(3) and 1343(4), and 42 U.S.C. § 3613.

4. Declaratory relief is sought under 28 U.S.C. §§ 2201 and 2202.

5. Plaintiff's claims arise under the Fair Housing Act, 42 U.S.C. §§ 3601-3631, the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, and 42 U.S.C. § 1983.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(2) since Plaintiff and Defendants reside in Delaware County and the events giving rise to Plaintiff's claims occurred in Delaware County.

## III. Parties

7. Plaintiff Ward St-Juste is a person with disabilities including autism, intellectual disability, and cognitive communication deficit.

8. Mr. St-Juste resides in Delaware County, Pennsylvania.

9. Mr. St-Juste brings this action through his mother and next friend, Celouse Saint-Flina, pursuant to Federal Rule of Civil Procedure 17(c).

10. Ms. Saint-Flina is a primary communicator for and on behalf of Mr. St-Juste, who, because of his disabilities, has very limited ability to verbally communicate.

11. Ms. Saint-Flina has no known interests in conflict with Mr. St-Juste's interests.

12. Defendant Borough of Darby ("Borough") is a political subdivision of the Commonwealth of Pennsylvania located in Delaware County.

13. Defendant Zoning Hearing Board of the Borough of Darby ("ZHB") is a quasi-judicial agency that has jurisdiction to hear and render adjudications in various land use matters in accord with the Pennsylvania Municipalities Planning Code, 53 P.S. § 10909.1.

## IV. Factual Background

14. Plaintiff Ward St-Juste is a twenty-one-year-old man with developmental disabilities including autism, intellectual disability and cognitive communication deficit.

15. Mr. St-Juste's disabilities substantially limit his ability to communicate, learn, work and care for himself.

16. Before he lived in the Borough, Mr. St-Juste participated in a residential program through Woods Services, where he shared a living space with six other young men with developmental disabilities.

17. The professionals who worked with Mr. St-Juste at Woods Services determined he would be best served in an individual residence within the community.

18. Mr. St-Juste enjoys playing basketball, taking walks in the community, and going to the movies.

### a. Law and policy favor integrating people with disabilities into the community.

19. The United States Congress recognizes that "[i]ndividuals with developmental disabilities have a right to appropriate treatment, services, and habilitation for such disabilities, and such "treatment, services, and habilitation . . . should be designed to maximize the developmental potential of the individual and should be provided in the setting that is least restrictive of the individual's personal liberty." 42 U.S.C. § 6009(1)-(2).

20. Similarly, "It is public policy in Pennsylvania that people who are developmentally disabled . . . shall enjoy the benefits of community residential surroundings" and, notably, "It is primarily the responsibility of municipalities through their zoning powers to permit the establishment of small, community residential facilities in all residential zones." Senate Resolution 42, 1985 Leg. J. Senate 1326 (1985), 1986 Leg. J. House 94 (1986).

**b. Home and community-based services waivers, including Pennsylvania's Consolidated Waiver, further the policy of integrating people with disabilities into the community.**

21. Pennsylvania participates in the joint federal-state Medical Assistance program authorized by Title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396 *et seq.* ("Title XIX").

22. States may also seek authorization from the Centers for Medicare and Medicaid Services ("CMS") to provide services to people with disabilities through Medical Assistance Home and Community Based Services waivers to enable them to avoid institutionalization. 42 U.S.C. § 1396n(c), 42 C.F.R. § 441.300.

23. CMS has authorized the Commonwealth of Pennsylvania Department of Human Services ("DHS") to administer several HCBS waivers, including one called the "Consolidated Waiver."

24. DHS developed the Consolidated Waiver "to emphasize deinstitutionalization, prevent or minimize institutionalization and provide an array of services and supports in community-integrated settings," using such services to "promote community living" for Pennsylvania residents who receive Medical Assistance who, at any age after medical evaluation, are diagnosed "with an intellectual disability or autism" and deemed to require an intermediate care facility ("ICF") level of care. *See* Application for

5

a §1915(c) Home and Community-Based Services Waiver: PA.0147.R07.00 (Jan. 1, 2023) ("Consolidated Waiver Renewal"), at 5, 56-60, *available at* https://www.dhs.pa.gov/Services/Disabilities-Aging/Documents/Developmental%20Programs/Consolidated%20Waiver%20Renewal%20Jan%202023.PDF (accessed May 23, 2023).

25. Consolidated Waiver participants have access to a wide variety of home and community-based services, including licensed residential habilitation. *Id.* at 67.

26. As defined by DHS and approved by CMS, under the Consolidated Waiver,

> Residential Habilitation services are direct and indirect services provided to participants who live in licensed and unlicensed provider owned, rented or leased residential settings. The service is built on the principle that every participant has the capacity to engage in lifelong learning. As such, through the provision of this service, participants will acquire, maintain, or improve skills necessary to live in the community . . . and to participate meaningfully in community life.

*Id.* at 109.

27. Residential habilitation services provided to Consolidated Waiver enrollees must be provided in a residential setting that is "integrated and dispersed in the community" and "surrounded by the general public." *Id.* at 112-13.

28. Furthermore, all HCBS waiver program settings must be "integrated and support[ ] full access of individuals receiving Medicaid HCBS to the greater community." 42 C.F.R. § 441.530(a)(1)(i).

### c. Mr. St-Juste has lived and received residential habilitation services at Lawrence House since January 2023.

29. From August 11, 2020, through the present, DHS has certified Quality Angels Home Care Agency ("Quality Angels") to provide residential habilitation services at "Lawrence House."

30. Lawrence House is the property at 1110 Lawrence Avenue, Darby, Pennsylvania 19023.

31. In January 2023, Mr. St-Juste was enrolled in and began receiving services through Pennsylvania's Consolidated Waiver program.

32. On or about January 27, 2023, Mr. St-Juste began living and receiving residential habilitation services from Quality Angels at Lawrence House.

33. While living at Lawrence House, Mr. St-Juste receives continuous support for his disability-related needs, including supervision, from two staff persons during the daytime hours and one staff person at night.

34. For example, Mr. St-Juste cannot safely use the stove, but he can, with assistance, use the microwave to help prepare his own meals.

35. Likewise, Mr. St-Juste is mainly independent in performing his activities of daily living such as dressing and grooming, though he does require assistance with shaving.

36. Lawrence House is within driving distance from Ms. Saint-Flina's residence.

37. Ms. Saint-Flina regularly visits with her son at Lawrence House, usually at least twice per week.

### d. The Borough inaccurately and discriminatorily mischaracterizes Lawrence House.

38. Lawrence House is a single-family, semi-detached (twin) home located in an R-3 District under the Borough's Zoning Code and Map.

39. Several uses are permitted as a matter of right in an R-3 District, including single-family, semi-detached homes and "community residence facilities, family-based."

40. The Borough's Zoning Code defines a family to include up to "five unrelated individuals living together as a single housekeeping unit with single kitchen facilities."

41. Under Pennsylvania law, homes for people with disabilities that meet a zoning code's definition of a "family" must be treated as such, regardless of the presence of staff, the operation of the home as a

"business," or the payment of fees by residents. *See In re Miller*, 515 A.2d 904, 908-09 (Pa. 1986).

42. Since only one individual – Mr. St-Juste – lives at Lawrence House, it is a "family" home and, as a semi-detached home, Lawrence House falls squarely within a use as a matter of right in a R-3 District.

43. On information and belief, Lawrence House could also be considered a family-based "community residence facility," which also is allowed as a matter of right in a R-3 District.

44. A "community residence facility, family based" is a "dwelling, licensed by the appropriate state agency, shared by persons requiring special care and their supervisors who live together as a single housekeeping unit" of up to five persons "in a family-like environment[ ] . . . designed to create a residential environment for the developmentally disabled . . . unable to live without supervision."

45. At or around the time Mr. St-Juste began living at Lawrence House, a representative of the Borough informed Michaeline James, director of Quality Angels, that she must apply for a zoning variance to continue providing services to Mr. St-Juste at Lawrence House even though his residence there is a use permitted as a matter of right.

9

46. Without legal counsel, Ms. James submitted a "Zoning Application" to the Borough's Department of Code Enforcement on January 30, 2023, indicating an intended use of Lawrence House as a "Residential Home/Group Home."

47. Ms. James stated the reason for this application as "to allow our current disabled resident [Mr. St-Juste] to remain in his home and enjoy his right to equality."

48. On information and belief, Quality Angels' request for a variance was submitted to the ZHB.

49. In a letter to the ZHB dated January 30, 2023, Ms. James explicitly noted that "zoning laws that exclude group homes from residential districts or impose special requirements on group homes" might violate the Fair Housing Act and its requirement that "zoning officers must grant reasonable accommodations by waiving certain zoning rules when necessary to allow people with disabilities equal opportunity to enjoy a dwelling."

50. Ms. James concluded this January 30, 2023 correspondence by stating that the residential habilitation program offered at Lawrence House serves one person, who resides "in the home with staff present at all times to help them achieve their independence," and she requested

approval of the zoning application "to avoid discrimination against the individual that currently resides" in that home.

51. The ZHB held a hearing on Ms. James's January 30, 2023 application on March 14, 2023.

52. The ZHB issued its Findings of Fact and Conclusions of Law to Ms. James on April 25, 2023, denying the request for a variance.

53. In its decision denying the variance, the ZHB does not address why Lawrence House is not a single-family, detached home which is permitted as a matter of right in the R-3 district.

54. In fact, Lawrence House appears no different in any significant way from a typical single-family home, with its primary resident being Mr. St-Juste and other occupants being his support staff, usually no more than two at a time, for a total of three persons living and performing ordinary household tasks in Lawrence House from day to day.

55. In its decision denying the variance, the ZHB does not address that Lawrence House physically resembles and is in no way distinct from other homes in the neighborhood where it is located.

56. In its decision denying the variance, the ZHB does not explicitly address the request that, if Mr. St-Juste were not permitted to live at Lawrence House as a matter of right in the R-3 District (which he is), the

Borough should make a reasonable accommodation to allow him to continue to live there.

57. In its decision denying the variance, the ZHB cited several factors for its decision, including that the police had been called "multiple" times to Lawrence House.

58. The ZHB decision does not provide specific dates, times or outcomes of those calls, nor did any police officer testify during the ZHB hearing.

59. In fact, the police were called twice to Lawrence House, and neither call related to violence or led to further police involvement.

60. Also, regarding the allegation of police involvement, the ZHB neglects in its decision to compare the number of police calls relating to Lawrence House with police calls to other family homes in the Borough or the neighborhood where Mr. St-Juste lives.

61. Moreover, neither the Borough nor the ZHB has authority to prohibit a family from living in a single-family home due to police calls.

62. In its decision denying the variance, the ZHB notes that several residents citing generic safety concerns testified in opposition to Ms. James's request for a variance.

63. In fact, only two Borough residents who do not live in the immediate vicinity of Lawrence House raised "safety concerns," which appeared to arise solely out of their having observed police at the home.

64. In its decision denying the variance, the ZHB expresses non-specific concerns regarding the nature of the intended use and the location of Lawrence House on a residential street.

65. In its decision denying the variance, the ZHB concluded that Lawrence House seemed more "institutional" than "family-based," a seeming reference to "community residence facilities, group-based," which are limited to Institutional Districts under the Borough's zoning scheme.

66. A community residence facility, group-based is defined as "[a] licensed facility designed for persons unable to live without supervision, such as the handicapped, developmentally disabled or mentally ill and their supervisors" and which, "[u]nlike a family-based facility. . . shall be an institutional facility" that "may also accommodate persons recovering from alcohol, drugs or similar addictions and provide for counseling, rehabilitation and supervision designed to mainstream residents back into society, enabling them to live independently."

67. In its decision denying the variance, the ZHB did not explain how a one-person home could be "institutional."

68. In its decision denying the variance, the ZHB concluded that granting the variance would alter the character of the neighborhood and substantially impair the appropriate use or development of adjacent properties and would be detrimental to the public welfare and is not consistent with the Borough zoning plan, despite the fact – not addressed by the ZHB at any point – that Mr. St-Juste's home is a single-family home that is permitted as a matter of right.

> **e. The ZHB's discriminatory refusal to allow Mr. St-Juste to continue to live at Lawrence House creates an imminent risk of harm to him.**

69. Mr. St-Juste is at imminent risk of irreparable harm due to Defendants' refusal to acknowledge his right to continue living in Lawrence House.

70. Transitions are particularly difficult for people who, like Mr. St-Juste, have developmental disabilities.

71. The team of family and professionals who have been caring for Mr. St-Juste spent many months trying to find him a suitable home in the community before these efforts culminated in Mr. St-Juste making Lawrence House his home and beginning to receive residential habilitation services at Lawrence House in January 2023.

72. If the Borough forces Quality Angels to cease serving Mr. St-Juste at Lawrence House, he will be forced to relocate precipitously, creating trauma and undermining the results of an intensive team effort to obtain appropriate Consolidated Waiver services in the community.

## V. Claims

### A. Count I – Violations of the Fair Housing Act ("FHA")

73. Plaintiff incorporates by reference herein the foregoing paragraphs 1 through 72.

74. Mr. St-Juste's autism, cognitive communication deficit and intellectual disability substantially limit his ability to communicate, learn, work and care for himself.

75. Mr. St-Juste's disabilities thus constitute a "handicap" under the FHA. *See* 42 U.S.C. § 3602(h).

76. Defendants violated the FHA, 42 U.S.C. § 3604(f)(1), by intentionally discriminating against Mr. St-Juste on the basis of his disabilities in, among other things: (a) not treating Mr. St-Juste's home in Lawrence House as a single-family home or, alternatively, as a community residence facility, family-based, both of which are permitted to operate as a matter of right in the R-3 district, and (b) instead requiring that his provider apply for a variance to allow him to live there and then denying that

variance request; and (c) allowing community opposition based on fears, prejudices and stereotypes to influence their decision that Mr. St-Juste should not receive residential habilitation services in his home in a R-3 district.

77. Even if Mr. St-Juste were not permitted to live at Lawrence House as a matter of right, Defendants discriminated against him in violation of 42 U.S.C. §§ 3604(f)(1) and 3604(f)(3)(B) by refusing to make reasonable accommodations in the Borough's zoning policies or practices as necessary to allow Mr. St-Juste to use and enjoy Lawrence House, when such accommodations would neither result in a fundamental alteration nor impose an undue financial or administrative burden on Defendants.

### B. Count II – Violations of Title II of the Americans with Disabilities Act ("ADA")

78. Plaintiff incorporates by reference herein the foregoing paragraphs 1 through 77.

79. Mr. St-Juste's autism, cognitive communication deficit and intellectual disability substantially limit his ability to communicate, learn, work and care for himself.

80. Mr. St-Juste is thus a person with disabilities protected by the ADA. *See* 42 U.S.C. §§ 12101(1), 12101(2)(1); 28 C.F.R. § 35.108.

81. Defendants are "public entities" required to comply with Title II of the ADA. 42 U.S.C. §§ 12131(1)(A)-(B).

82. Defendants violated Title II of the ADA, 42 U.S.C. § 12132 and 28 C.F.R. §§ 35.130(a)-(b), by discriminating against Mr. St-Juste on the basis of his disabilities in, among other things: (a) not treating Mr. St-Juste's home in Lawrence House as a single-family home or, alternatively, as a community residence facility, family-based, both of which are permitted to operate as a matter of right in the R-3 district, and (b) instead requiring that his provider apply for a variance to allow him to live there and then denying that variance request.

83. These actions and inactions, in violation of the ADA, treat Mr. St-Juste differently based on his disability, deny him an equal opportunity to benefit from the Borough's zoning program based on his disability, and reflect discriminatory methods of administration and methods of administration that impede or substantially impair accomplishment of the objectives of the Borough's zoning program for people with disabilities.

84. Even if Mr. St-Juste were not permitted to live at Lawrence House as a matter of right, Defendants discriminated against him in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7)(i) by refusing to make reasonable accommodations in the Borough's zoning policies or

practices as necessary to allow Mr. St-Juste to use and enjoy Lawrence House, when such accommodations would neither result in a fundamental alteration nor impose an undue financial or administrative burden on Defendants.

VI. **Relief Sought**

85. Wherefore, Plaintiff respectfully requests that the Court award the following relief:

  a. exercise jurisdiction over this action;

  b. issue appropriate declaratory relief, a temporary restraining order, and preliminary and permanent injunctive relief;

  c. grant such other relief as may be appropriate, including reasonable attorneys' fees, litigation expenses, and costs pursuant to 42 U.S.C. §§3613(c)(2) and 12205.

Dated: May 25, 2023

Respectfully submitted,

By: */s/ Laura E. Caravello*
Laura E. Caravello
PA ID No. 312091
Disability Rights Pennsylvania
429 Fourth Avenue
Suite 1404
Pittsburgh, PA 15219-1505
Office: 412-391-5225
Fax: 412-467-8940
lcaravello@disabilityrightspa.org

*/s/ Christina Drzal*
Christina Drzal
PA ID No. 95124
Disability Rights Pennsylvania
1800 John F. Kennedy Boulevard
Suite 900
Philadelphia, PA 19103-7421
Office: 215-238-8070
Fax: 215-772-3216
cdrzal@disabilityrightspa.org

*Counsel for Plaintiff*